## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EAST MEDITERRANEAN GAS S.A.E.,
24 Roushdy Street
Heliopolis 11361, Cairo
Egypt,

        Petitioner,

        v.

EGYPTIAN GENERAL PETROLEUM
CORPORATION,
4 Palestine Street
4th Division, New Maadi 11742, Cairo
Egypt,

and

EGYPTIAN NATURAL GAS HOLDING
COMPANY,
85 El Nasr Road
1st District, Nasr City 11371, P.O. Box 8064
Cairo
Egypt,

        Respondents.

Civil Action No. _____

## PETITION TO RECOGNIZE AND ENFORCE AN ARBITRATION AWARD

Petitioner East Mediterranean Gas S.A.E. ("Petitioner"), by and through the undersigned counsel, states as follows:

## INTRODUCTION

1. Petitioner respectfully seeks an order, pursuant to the Convention on the Recognition and Enforcement of Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 (the "New York Convention"), as codified by the Federal Arbitration Act, 9 U.S.C. §§ 201-208, recognizing and enforcing the final arbitral award ("Award"), issued on December 4, 2015, in the arbitration between Petitioner and (i) Respondents Egyptian General Petroleum

Corporation and Egyptian Natural Gas Holding Company, agencies or instrumentalities of the Arab Republic of Egypt ("Egypt"), and (ii) non-party Israel Electric Corporation Ltd.  That arbitration was captioned East Mediterranean Gas S.A.E. v. Egyptian General Petroleum Corporation, Egyptian Natural Gas Holding Company and Israel Electric Corporation Ltd., Case No. 18215/GZ/MHM.  The arbitration was conducted before an arbitral tribunal (the "Tribunal") duly constituted under the auspices of the International Chamber of Commerce ("ICC"), and was seated in Geneva, Switzerland (the "Arbitration").  Petitioner also seeks an order (i) entering judgment in Petitioner's favor against Respondents in the amount of the Award, with interest and costs as provided therein, plus the costs of this proceeding, and (ii) awarding Petitioner such other and further relief as the Court deems just and proper.  A certified copy of the Award is attached as Exhibit A to the Declaration of Noah D. Rubins in support of this Petition, dated November 30, 2018 ("Rubins Declaration" or "Rubins Decl").

## THE PARTIES

2.     Petitioner East Mediterranean Gas S.A.E. is a privately-owned company incorporated in Egypt, with its registered office at 24 Roushdy Street, Heliopolis 11361, Cairo, Egypt.

3.     Respondent Egyptian General Petroleum Corporation ("EGPC") is an agency or instrumentality of Egypt.  EGPC is an entity organized and existing under the laws of Egypt, with its registered office at 4 Palestine Street, 4th Division, New Maadi 11742, Cairo, Egypt.

4.     Respondent Egyptian Natural Gas Holding Company ("EGAS," and together with EGPC, the "Respondents") is an agency or instrumentality of Egypt.  EGAS is an entity organized and existing under the laws of Egypt, with its registered office at 85 El Nasr Road, 1st District, Nasr City 11371, P.O. Box 8064, Cairo, Egypt.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 9 U.S.C. § 203, which provides that the United States District Courts shall have original subject matter jurisdiction over a proceeding governed by the New York Convention, which has been implemented by the Federal Arbitration Act, 9 U.S.C. §§ 201-208.  Egypt, Switzerland and the United States are all signatories to the New York Convention, which calls for the recognition and enforcement of the Award.

6.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1330(a), which provides that the United States District Courts shall have original subject matter jurisdiction over any nonjury civil action against a foreign State, as defined in 28 U.S.C. § 1603, unless the foreign State is entitled to immunity under the Foreign Sovereign Immunities Act ("FSIA), 28 U.S.C. §§ 1605-1607 or an applicable international agreement.  Each of EGPC and EGAS is an agency or instrumentality of Egypt, and is therefore a "foreign State" within the meaning of the FSIA.  See 28 U.S.C. § 1603(b).  The FSIA denies immunity to a foreign State in an action to enforce an international commercial arbitration award, see 28 U.S.C. § 1605(a)(6). Therefore, the Respondents are not immune from this suit, and this court has subject matter jurisdiction.

7.      This Court has personal jurisdiction over the Respondents under 28 U.S.C. § 1330(b), which provides that a United States District Court shall have personal jurisdiction over a foreign State, including an agency or instrumentality thereof, that is not immune from suit, provided that service of process is effected in accordance with 28 U.S.C. § 1608.  Petitioner intends to serve process on the Respondents in a timely manner pursuant to 28 U.S.C. § 1608(a), including, if required, through the Convention of 15 November 1965 on the Service Abroad of

Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163.

8.      Because the Respondents each fall within the definition of a "foreign State," see 28 U.S.C. § 1603(a) (defining "foreign state" to include agencies or instrumentalities of foreign States), this Court has, and can exercise, personal jurisdiction over the Respondents without conducting any due process analysis that would be applicable to "persons."  See TMR Energy Ltd. v. State Prop. Fund of Ukraine, 411 F.3d 296, 301-02 (D.C. Cir. 2005) (an instrumentality of a sovereign State "is not a 'person' for purpose of the due process clause and cannot invoke the minimum contacts test to avoid the personal jurisdiction of the district court"); Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic, 582 F.3d 393, 400 (2d Cir. 2009) ("[F]oreign states are not 'persons' entitled to rights under the Due Process Clause . . . .").

9.      Alternatively, satisfying the requirements of the FSIA itself satisfies the constitutional due process requirements necessary to exercise personal jurisdiction over a party, and the Court accordingly has personal jurisdiction over the Respondents.  See Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82, 90 (D.C. Cir. 2002) (the exercise of personal jurisdiction over foreign states under the FSIA always would satisfy the demands of Constitutional Due Process); Sachs v. Republic of Austria, 737 F.3d 584, 598 (9th Cir. 2013) (en banc) (same), rev'd on other grounds OBB Personeverkehr AG v. Sachs, 136 S. Ct. 390 (2015); Shapiro v. Republic of Bolivia, 930 F.2d 1013, 1020 (2d Cir. 1991) (satisfying the FSIA's nexus requirement is more than sufficient to satisfy the requirements of the Due Process Clause).

10.      In addition, and as a further, independent basis for the exercise of jurisdiction, this Court has *in rem* jurisdiction over the Respondents' assets located in the United States, including, but not limited to: the contents of all bank accounts located in the United States; any

accounts receivables due to the Respondents from U.S. counterparties, including, but not limited to, Apache Corporation, IPR Energy Group, and Merlon International, LLC; and any and all equity interest held by the Respondents in U.S. subsidiaries.  See United States v. All Funds in Account Nos. 747.034/278, 747.009/278, & 747.714/278 in Banco Espanol de Credito, Spain, 295 F.3d 23, 25 (D.C. Cir. 2002); Hausler v. JPMorgan Chase Bank, N.A., 740 F. Supp. 2d 525, 539 (S.D.N.Y. 2010); CME Media Enters. B.V. v. Zelezny, No. 01 Civ. 1733(DC), 2001 WL 1035138, at * 3 (S.D.N.Y. Sept. 10, 2001).

11.    Venue in this Court is proper pursuant to 9 U.S.C. § 204 and 28 U.S.C. § 1391(c), (d), and (f).

## THE DISPUTE AND THE AWARD

12.    The underlying dispute stems from Respondents' unlawful termination of a gas supply agreement with Petitioner, and Respondents' failure to abide by contractual commitments to supply Petitioner with sufficient quantities of natural gas.  The natural gas that Respondents contracted to supply to Petitioner (an Egyptian company with Egyptian, Israeli and American shareholders) was transported from Egypt to Israel through the so-called "Peace Pipeline" built and operated by Petitioner.  The gas supplied via the Peace Pipeline was intended to cover a substantial part of Israel's energy needs.  See Rubins Decl. Ex. A. ¶¶ 125, 128.

13.    The parties' contractual relationship began in 2005.  They entered into the following agreements: (i) Petitioner and Respondents entered into a Gas Supply and Purchase Agreement ("GSPA"), pursuant to which Respondents agreed to supply, and Petitioner agreed to purchase, certain quantities of Egyptian gas to be transported to Israel via the Peace Pipeline, see Rubins Decl. ¶ 6; Rubins Decl. Ex. B; (ii) Petitioner, in turn, entered into an On-Sale Agreement with non-party Israel Electric Corporation Ltd. ("IEC"), pursuant to which the IEC agreed to

purchase from Petitioner gas shipped through the Peace Pipeline, see Rubins Decl. ¶ 6; Rubins Decl. Ex. C; and (iii) Petitioner, IEC and Respondents signed a Tripartite Agreement, which put IEC and Respondents in contractual privity, and by which Respondents guaranteed the supply of gas to IEC through the Peace Pipeline by fulfilling Respondents' obligations to Petitioner under the GSPA, see Rubins Decl. ¶ 6; Rubins Decl. Ex. D.  Together, the GSPA, the On-Sale Agreement, and the Tripartite Agreement are referred to herein as the "Pipeline Agreements."

14.      In entering the Pipeline Agreements, Petitioner and Respondents agreed to resolve their disputes by way of binding arbitration.  Thus, as relevant here, both the Tripartite Agreement and the GSPA contain arbitration clauses.  See Rubins Decl. Ex. B, Annex 1, Art. 14; Rubins Decl. Ex. D, Art. 9.  The Tripartite Agreement provides for ICC arbitration, seated in Geneva, Switzerland, while the GSPA provides for arbitration pursuant to the Rules of Arbitration of the Cairo Regional Centre for International Commercial Arbitration ("CRCICA"). The Award at issue in this proceeding is the product of an ICC arbitration under the Tripartite Agreement.[1]

15.      Relying on the contractual commitments in the Pipeline Agreements, Petitioner invested approximately US$500 million in making the Peace Pipeline operational.  See Rubins Decl. Ex. A. ¶ 126.  Petitioner's investment was successful, and the Peace Pipeline came online in 2008.  Id. ¶ 759.

16.      In January 2011, "a popular uprising precipitated the fall of the Mubarak regime," which resulted in "[c]haos and violence" throughout Egypt.  Id. ¶ 766.  The security apparatus guarding the Peace Pipeline on the Egyptian side "literally disappeared overnight" and the Peace

---

[1]      Respondents brought a separate, CRCICA arbitration under the GSPA, in which Petitioner asserted counterclaims.  The arbitral tribunal in that proceeding also found in favor of Petitioner.  See Rubins Decl. ¶ 10.

Pipeline soon became a target of repeated terrorist attacks.  See id. ¶ 767.  These attacks severely disrupted the supply of gas to Israel through the Peace Pipeline.  See id. ¶ 126.  As a result, a dispute arose between the parties, and Respondents eventually terminated the GSPA and the Tripartite Agreements, leaving Petitioner with an idle pipeline.

17.    On October 6, 2011, Petitioner filed a Request for Arbitration against Respondents, claiming that they had first breached their supply obligations under GSPA and the Tripartite Agreement, and then wrongfully repudiated both contracts.  See id. ¶ 20.

18.    The parties constituted the Tribunal on April 5, 2012.  The arbitration proceedings were extensive, and Petitioner and the Respondents participated fully.  The parties submitted over two hundred pre-hearing communications and written submissions to the Tribunal, and the Tribunal issued no fewer than 78 separate interlocutory decisions.  See id. at ¶ 12.  The Tribunal then conducted two hearings in Paris, France:  the first lasting from January 13 through January 24, 2014, and the second on May 15 and 16, 2014.  The parties filed a number of post-hearing written submissions throughout 2014 and 2015.  See Rubins Decl. ¶ 11.

19.    On December 4, 2015, the Tribunal issued the 469-page, final and binding Award. In the Award, the Tribunal concluded that it had jurisdiction over the parties' dispute under the Tripartite Agreement.  Rubins Decl. Ex. A at ¶¶ 182, 435.  With respect to the merits of the dispute, the Tribunal concluded that Respondents' "purported termination [of the GSPA] was unlawful" and that Respondents' unlawful termination of the GSPA resulted, in turn, in a wrongful repudiation of the Tripartite Agreement.  Id. at ¶¶ 183, 192, 1203.  The Tribunal awarded Petitioner monetary damages in the amount of US$288,292,714, together with interest at the rate equal to USD LIBOR for one month deposits plus 3%, to be calculated at the end of each month, and to be compounded annually, until payment is made full.  See id. ¶ 1831.  The

Tribunal also ordered Respondents to reimburse Petitioner for arbitration costs in the amount of US$1,742,633.  As of November 28, 2018, the full value of the Award, which remains unpaid, is US$367,497,886.  Rubins Decl. ¶ 12.

20.     Rather than pay the Award, Respondents sought to annul it by commencing vacatur proceedings in Switzerland, the legal seat of the arbitration.  See Rubins Decl. ¶ 13.  Respondents argued, *inter alia*, that the Tribunal incorrectly found that it had jurisdiction over Petitioner's claims and failed to address some of Respondents' arguments regarding *force majeure* and aspects of the damages calculation, thereby violating Respondents' right to be heard.  On April 25, 2017, the First Civil Chamber of the Swiss Federal Tribunal rejected each of Respondents' arguments and denied their application to vacate the Award. See Rubins Decl. Ex. E.

## LEGAL BASIS FOR RELIEF

21.     Petitioner restates and incorporates Paragraphs 1 through 20 as if set forth fully herein.

22.     The Award arises out of commercial contracts between Petitioner and Respondents (the Pipeline Agreements), none of whom are citizen of the United States, and was issued in Geneva, Switzerland.  The Award is therefore governed by the New York Convention, to which Egypt, Switzerland and the United States are parties.[2]

23.     Accordingly, the New York Convention, as implemented by the Federal Arbitration Act ("FAA"), governs the enforcement of the Award in the United States.  See 9 U.S.C. § 201.  The FAA and the New York Convention make recognition and enforcement mandatory unless certain narrow defenses are proved.  See New York Convention, Arts. III, V; 9

---

[2]     See New York Arbitration Convention, Contracting States, http://www.newyorkconvention.org/countries (last accessed November 7, 2018).

U.S.C. § 207 (the "court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."). None of the defenses to the enforcement of an arbitral award are applicable here.

24.     The Award—which is final and binding within the meaning of the New York Convention and the FAA—is therefore binding on the parties, and is subject to recognition and enforcement in the United States pursuant to the New York Convention and the FAA.

25.     Petitioner is thus entitled to an order recognizing the Award pursuant to 9 U.S.C. § 207 and Article III of the New York Convention, and entering judgment in favor of Petitioner and against Respondents in the full amount of the Award, with the interest and costs as provided therein accruing through the date of this Court's judgement, post-judgment interest, pursuant to 28 U.S.C. § 1961, accruing thereafter through the date of payment, plus the costs of this proceeding.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that the Court enter an order:

a.     Recognizing and enforcing the Award as a judgment of this Court, pursuant to 9 U.S.C. § 207 and Article III of the New York Convention;

b.     Entering judgment in favor of Petitioner and against the Respondents in the amount of the full value of the Award, *i.e.*, (i) damages awarded by the Tribunal in the amount of US$288,292,714; (ii) legal fees and costs as awarded by the Tribunal, in the amount of US$1,742,633; (iii) ongoing interest as provided by the Tribunal pursuant to paragraph 1831 of the Award accruing through the date of this Court's judgement; and (iv) post-judgment interest, pursuant to 28 U.S.C. § 1961, accruing thereafter through the date of payment;

c.     Ordering the Respondents to pay the costs of this proceeding;

d.     Granting any other relief that this Court, in the interests of justice, deems necessary and proper.

A proposed order is appended hereto.

Dated:  November 30, 2018

Respectfully submitted,

By: */s/ Linda H. Martin*

Linda H. Martin (D.C. Bar No. NY0210)
Elliot Friedman (D.C. Bar. No. NY0106)
David Y. Livshiz (D.C. Bar No. NY0269)
FRESHFIELDS   BRUCKHAUS   DERINGER
US LLP
601 Lexington Avenue 31st Floor
New York, New York 10022
Telephone: +1 (212) 277 4000
linda.martin@freshfields.com
elliot.firedman@freshfields.com
david.livshiz@freshfields.com

*Attorneys for Petitioner*
*East Mediterranean Gas S.A.E.*