IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EAST MEDITERRANEAN GAS S.A.E., <br><br> Petitioner, <br><br> v. <br><br> EGYPTIAN GENERAL PETROLEUM CORPORATION, and EGYPTIAN NATURAL GAS HOLDING COMPANY, <br><br> Respondents. | Civil Action No. _____ |

## DECLARATION OF NOAH D. RUBINS

Pursuant to 28 U.S.C. § 1746, I, Noah Rubins, declare and state as follows:

1. I am a partner with the law firm Freshfields Bruckhaus Deringer LLP and counsel for petitioner and arbitration award creditor East Mediterranean Gas S.A.E. (the "Petitioner"). I am qualified to practice as a barrister in England and Wales, and am admitted to the bars of the District of Columbia, New York, and Texas.

2. I respectfully submit this declaration in support of Petitioner's Petition to Recognize and Enforce an Arbitration Award (the "Petition"). The Petition seeks an order and judgment recognizing and enforcing an arbitration award (the "Award") against Respondents Egyptian General Petroleum Corporation and Egyptian Natural Gas Holding Company (together, the "Respondents") following an arbitration conducted under the auspices of the International Chamber of Commerce ("ICC"). That arbitration was captioned <u>East Mediterranean Gas S.A.E. v. Egyptian General Petroleum Corporation, Egyptian Natural Gas Holding Company and Israel Electric Corporation Ltd.</u>, Case No. 18215/GZ/MHM (the "Arbitration"), and resulted in an arbitration award in favor of Petitioner dated December 4, 2015.

3.      I represented Petitioner in the Arbitration. I am therefore familiar with, and have personal knowledge of, the arbitral proceedings that culminated in the Award and the subsequent vacatur proceedings that the Respondents commenced in Switzerland. I make this declaration based on my personal knowledge, and based on my review of the record of the Arbitration, the vacatur proceedings, and the exhibits attached to this Declaration.

4.      A true and correct copy of the Award is attached as Exhibit A to this Declaration.

5.      The underlying dispute stems from Respondents' unlawful termination of a gas supply agreement with Petitioner, and Respondents' failure to abide by contractual commitments to supply Petitioner with sufficient quantities of natural gas. The natural gas that Respondents contracted to supply to Petitioner (an Egyptian company with Egyptian, Israeli and American shareholders) was transported from Egypt to Israel through the so-called "Peace Pipeline" built and operated by Petitioner. The gas supplied via the Peace Pipeline was intended to cover a substantial part of Israel's energy needs.

6.      The parties' contractual relationship began in 2005. They entered into the following agreements: (i) Petitioner and Respondents entered into a Gas Supply and Purchase Agreement ("GSPA"), pursuant to which Respondents agreed to supply, and Petitioner agreed to purchase, certain quantities of Egyptian gas to be transported to Israel via the Peace Pipeline; (ii) Petitioner, in turn, entered into an On-Sale Agreement with non-party Israel Electric Corporation Ltd. ("IEC"), pursuant to which the IEC agreed to purchase from Petitioner gas shipped through the Peace Pipeline; and (iii) Petitioner, IEC and Respondents signed a Tripartite Agreement, which put IEC and Respondents in contractual privity, and by which Respondents guaranteed the supply of gas to IEC through the Peace Pipeline by fulfilling Respondents' obligations to

2

Petitioner under the GSPA. Together, the GSPA, the On-Sale Agreement, and the Tripartite Agreement are referred to herein as the "Pipeline Agreements."

7. A true and correct copy of the GSPA is attached as Exhibit B to this Declaration.

8. A true and correct copy of the On-Sale Agreement is attached as Exhibit C to this Declaration.

9. A true and correct copy of the Tripartite Agreement is attached as Exhibit D to this Declaration.

10. In entering the Pipeline Agreements, Petitioner and Respondents agreed to resolve their disputes by way of binding arbitration. Thus, as relevant here, both the Tripartite Agreement and the GSPA contain arbitration clauses. See Ex. B, Annex 1, Art. 14; Ex. D, Art. 9. The Tripartite Agreement provides for ICC arbitration, seated in Geneva, Switzerland, while the GSPA provides for arbitration pursuant to the Rules of Arbitration of the Cairo Regional Centre for International Commercial Arbitration ("CRCICA").[1] The Award at issue in this proceeding is the product of an ICC arbitration under the Tripartite Agreement.

11. Petitioner commenced the Arbitration on October 6, 2011 by filing a Request for Arbitration, which was registered by the ICC Secretariat on October 7, 2011. The arbitral tribunal (the "Tribunal") was constituted on April 5, 2012. The Arbitration proceedings were extensive, and Petitioner and the Respondents participated fully. The parties submitted over two hundred pre-hearing communications and written submissions to the Tribunal, and the Tribunal issued no fewer than 78 separate interlocutory decisions. See Ex. A at ¶ 12. The Tribunal then

---

[1] Respondents brought a separate, CRCICA arbitration under the GSPA, in which Petitioner asserted counterclaims. The arbitral tribunal in that proceeding also found in favor of Petitioner.

conducted two hearings in Paris, France: the first lasting from January 13 through January 24, 2014, and the second on May 15 and 16, 2014. The parties filed a number of post-hearing written submissions throughout 2014 and 2015.

12. As noted above, on December 4, 2015, the Tribunal issued the Award in Petitioner's favor. The Tribunal's decision, which runs to 469 pages, addressed the various jurisdictional and merits arguments made by the parties. The Tribunal concluded that it had jurisdiction over the parties' dispute under the Tripartite Agreement and that Respondents had breached their contractual obligations to Petitioner. The Tribunal awarded Petitioner monetary damages in the amount of US$288,292,714, together with interest at the rate equal to USD LIBOR for one month deposits plus 3%, to be calculated at the end of each month, and to be compounded annually, until payment is made full. See Ex. A (Award), ¶ 1831. The Tribunal also ordered Respondents to reimburse Petitioner for arbitration costs in the amount of US$1,742,633. As of November 28, 2018, the full value of the Award, which remains unpaid, is US$367,497,886.

13. Rather than pay the Award, on January 19, 2016 Respondents sought to vacate the Award in Switzerland, the legal seat of the Arbitration. Respondents argued, *inter alia*, that the Tribunal incorrectly found that it had jurisdiction over Petitioner's claims, and that the Tribunal failed to address some of Respondents' arguments regarding *force majeure* and aspects of the damages calculation, thereby violating Respondents' right to be heard. On April 25, 2017, the First Civil Chamber of the Swiss Federal Tribunal rejected each of Respondents' arguments and denied their application to vacate the Award. A true and correct copy of the Swiss court decision and an English translation of it are attached as Exhibit E to this Declaration.

\*\*\*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on:   November 30, 2018
              Paris, France

_____
Noah D. Rubins